# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GALEN PENDERGRASS, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 18-622 (RMC) |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Galen Pendergrass sues the Washington Metropolitan Area Transit Authority (WMATA), claiming discrimination and retaliation in hiring practices due to his race and previous lawsuit related to WMATA's Criminal Background Check Policy. Mr. Pendergrass alleges violations of multiple federal statutes, as well as the District of Columbia Human Rights Act. WMATA moves to dismiss all but Mr. Pendergrass's Title VII claims for lack of jurisdiction and failure to state a claim. The Court will grant WMATA's motion.

## I. FACTS

Mr. Pendergrass is an African-American male. He applied for a position as a Bus Operator with WMATA in the fall of 2017 and received a contingent offer of employment from WMATA on October 6, 2017. Pl. Resp. to Def.'s Mot. to Dismiss Compl. in Part (Opp'n) [Dkt. 9] at 2. In October 2017, Mr. Pendergrass communicated with First Choice Background Company to complete his background check. On November 17, 2017, WMATA notified Mr. Pendergrass that he was ineligible for employment due to his prior conviction for a non-violent offense. Compl. [Dkt. 1] ¶ 4. The November 17 letter contained a description of the individualized assessment process that Mr. Pendergrass could initiate to request that WMATA

1

reevaluate his denial of employment. *Id*. Mr. Pendergrass submitted a request for an individualized assessment on November 29, 2017, which included "approximately 50 pages of documents that showed why he should not be permanently excluded" from employment with WMATA. *Id*. ¶ 5. Mr. Pendergrass alleges that WMATA's Criminal Background Check Policy has a disparate impact on African-American candidates due to the historically higher rate of criminal convictions of African Americans. *See id*. ¶¶ 14-16.

### A. Background of WMATA's Criminal Background Check Policy

WMATA was created by an Interstate Compact among Washington, D.C., Virginia, and Maryland, and approved by Congress, to be the primary public transit agency for the D.C. metropolitan region. *Id*. ¶ 2. "The Compact confers broad powers on WMATA to 'create and abolish offices, employments and positions provide for the qualification, appointment, and removal of its employees, and establish, in its discretion, a personnel system based on merit and fitness.'" *Beebe v. Washington Metro. Area Transit Auth.*, 129 F.3d 1283, 1287 (D.C. Cir. 1997) (quoting D.C. Code Ann. § 1-2431(12)(g) and (h)).

WMATA adopted a revised Criminal Background Check Policy (Policy 7.2.3) in December 2011, which took effect on February 23, 2012. Policy 7.2.3 applies to all external candidates for positions with WMATA. If WMATA learned a candidate has a disqualifying conviction, it mailed a letter to the candidate explaining the results and stating that s/he had ten days to dispute the results. Under Policy 7.2.3, candidates could dispute the accuracy of the background check, but a candidate could not ask for an exception to Policy 7.2.3.

WMATA further revised policy 7.2.3 and adopted Policy 7.2.3/2 in July 2017. Opp'n at 1. Policy 7.2.3/2 added a procedure for individuals to request an individualized

assessment of their convictions to determine if the applicant should not be disqualified from employment based on the conviction. *See* Compl. ¶ 6

### B. Procedural Posture

Mr. Pendergrass filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (EEOC) on December 4, 2017 and received a Notice of Right to Sue letter on December 7, 2017. *Id*. ¶¶ 7-8. Mr. Pendergrass filed the immediate Complaint on March 7, 2018, alleging claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq*., the District of Columbia Human Rights Act (DCHRA), D.C. Code § 12-1401 *et seq*., and the "Washington Metropolitan Area Transit Authority Background Screening Policy/Instruction (PI) 7.2.32 *et seq*." *Id*. at 1. WMATA moved to dismiss all claims except those arising under Title VII.[1] The motion is ripe for review.[2]

### C. Jurisdiction and Venue

The Court has jurisdiction over Mr. Pendergrass's Title VII and FCRA claims under 28 U.S.C. §§ 1331 and 1342.[3] *See also* 42 U.S.C. § 2000e-16(c); 15 U.S.C. § 1681p. Title VII and the FCRA are laws of the United States, which gives original jurisdiction to the federal district courts. The Court has supplemental jurisdiction over Mr. Pendergrass's DCHRA claims under 28 U.S.C. § 1367(a). Venue is proper in this Court because the events took place in

---

[1] Mr. Pendergrass raises both a claim of discrimination based on disparate impact and a claim of retaliation for prior protected activities under Title VII.

[2] *See* Def.'s Mot. to Dismiss Compl. in Part (Mot.) [Dkt. 6]; Mem of P. & A. in Supp. of Def.'s Mot. to Dismiss Compl. in Part (Mem.) [Dkt. 6-1]; Opp'n; Reply in Supp. of Def.'s Mot. to Dismiss in Part (Reply) [Dkt. 8].

[3] To the extent Mr. Pendergrass also brings a claim under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b)(1), the Court has exclusive jurisdiction.

Washington, D.C. and the WMATA Compact specifies the United States District Court for the District of Columbia as the proper venue for litigating disputes with WMATA. *See* WMATA Compact, D.C. Code § 9-1107.01(81).

## II. LEGAL STANDARDS

### A. Motion to Dismiss – Fed. R. Civ. P. 12(b)(1)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a complaint, or any portion thereof, for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When reviewing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), a court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). Nevertheless, "the Court need not accept factual inferences drawn by plaintiff[] if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiff['s] legal conclusions." *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006).

### B. Motion to Dismiss – Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) requires a complaint to be sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Although a complaint does not need to include detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The facts alleged "must be enough to raise a right to relief above the speculative level." *Id.* A complaint must contain sufficient factual matter to state a claim for relief that is "plausible on its face." *Id.* at 570.

When a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, then the claim has facial plausibility. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. But a court need not accept as true legal conclusions set forth in a complaint. *Iqbal*, 556 U.S. at 678.

In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007). Generally, when a court relies upon matters outside the pleadings, a motion to dismiss must be treated as one for summary judgment and disposed of pursuant to Rule 56. *See* Fed. R. Civ. P. 12(d). "However, where a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment." *Nat'l Shopmen Pension Fund v. Disa*, 583 F. Supp. 2d 95, 99 (D.D.C. 2008).

### III. ANALYSIS

WMATA moves to dismiss all claims except those under Title VII. Mr. Pendergrass does not specifically oppose any of the arguments raised by WMATA in its motion, but instead attempts to raise claims under the Federal Tort Claims Act. While the Court finds that Mr. Pendergrass has waived his objections to the motion to dismiss his claims under the Fair Credit Reporting Act, DCHRA, and any "arising under" WMATA's Criminal Background Check Policy by failing to contest it, it will briefly address WMATA's arguments concerning each claim. *See Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25

(D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."), *aff'd* 98 F. App'x 8 (D.C. Cir. 2004).

### A. Fair Credit Reporting Act

WMATA argues that Mr. Pendergrass's FCRA claim should be dismissed because WMATA is immune from suit under the Eleventh Amendment. WMATA was created by a congressionally-authorized interstate compact among Maryland, Virginia, and the District of Columbia. *See Beebe*, 129 F.3d at 1285. "In signing the WMATA Compact, Maryland, Virginia, and the District of Columbia conferred upon WMATA their respective sovereign immunities." *Id.* at 1287. Therefore, WMATA can only be liable if it has waived its immunity or Congress has abrogated the immunity of the States (and therefore WMATA), with respect to the federal law raised in the Complaint.

The Compact has one section pertaining to the waiver of sovereign immunity, which states:

> The Authority shall be liable for its contracts and for its torts and those of its Directors, officers, employees and agent committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function.

D.C. Code § 9-1107.01(80). The Court finds that this waiver of immunity does not waive immunity against claims under the Fair Credit Reporting Act.

Additionally, the Court finds that Congress has not abrogated the States' immunity to claims under the FCRA, and, therefore, WMATA remains immune from FCRA claims. *See Betts v. Commonwealth of Va.*, No. 06-753, 2007 WL 515406, at *2-3 (E.D. Va.

Feb. 2, 2007) ("[T]here is no indication that Congress abrogated the States' Eleventh Amendment immunity when it enacted the FCRA."); *Alexander v. Dist. Court of Md. for Charles Cty.*, No. 2007-1647, 2008 WL 6124449, at *7 n.9 (D. Md. Mar. 20, 2008) ("Congress has not abrogated state sovereign immunity in enacting the Fair Credit Reporting Act.").

Because WMATA has not waived its immunity and Congress has not abrogated the States' immunity, the FCRA claim will be dismissed.

## B. DCHRA

WMATA argues that Mr. Pendergrass's DCHRA claims must be dismissed because as an entity established by an Interstate Compact, it is not susceptible to the individual laws of the signatory jurisdictions unless all signatories and Congress agree. Therefore, for WMATA to be subject to the requirements of the DCHRA, Maryland, Virginia, and Congress would have to give express permission under the Compact. *See Lucero-Nelson v. Washington Metro. Area Transit Auth.*, 1 F. Supp. 2d 1, 7 (D.D.C. 1998) ("[P]ursuant to the WMATA Compact, one signatory may not impose its legislative enactment upon the entity created by [the Compact] without the express consent of the other signatories and of the Congress of the United States."); *see also Office and Prof'l Emps. Int'l Union, Local 2 v. Washington Metro. Area Transit Auth.*, 724 F.2d 133, 139 (D.C. Cir. 1983).

Mr. Pendergrass does not allege that Virginia and Maryland—or the Congress—have consented to the application of the DCHRA to WMATA and WMATA states that they have not so consented. Caselaw supports its position. *See, e.g.*, *Taylor v. Washington Metro. Area Transit Auth.*, 109 F. Supp. 2d 11, 18 (D.D.C. 2000) ("It is well-established that WMATA is not subject to the DCHRA."); *Lucero-Nelson*, 1 F. Supp. 2d at 7 ("There is ample precedent holding that WMATA is not subject to the [D.C. Human Rights] Act."). The Court finds that WMATA is not subject to the DCHRA. It will dismiss the DCHRA claims.

### C. Claims "Arising Under" WMATA's Criminal Background Check Policy

The Complaint alleges that WMATA has failed to comply with its Criminal Background Check Policy and, therefore, has breached its agreement with applicants under the Policy. WMATA argues that no claims "arise under" the Criminal Background Check Policy and any claims that WMATA committed a tort or breached the policy should be dismissed.

To allege a breach of contract claim, Mr. Pendergrass must first allege the existence of a contract. *See Ihebereme v. Capital One, N.A.*, 730 F. Supp. 2d 40, 47 (D.D.C. 2010) ("In the case of a claim for breach of contract, the complaint must allege four necessary elements in order to effect fair notice: '(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach.'") (quoting *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009)). Although Mr. Pendergrass points to the Criminal Background Check Policy as the "contract" at issue, he has not sufficiently alleged that WMATA's enactment of the Policy actually constitutes a contract between WMATA and its applicants. This Court previously held in *Martin v. Washington Metro. Area Transit Auth.*, 273 F. Supp. 2d 114 (D.D.C. 2003), that WMATA's hiring procedures did not create a contractual obligation toward applicants and Mr. Pendergrass has presented no argument that refutes that opinion. *Id.* at 118-19. Therefore, the Court will dismiss all contract claims allegedly "arising under" WMATA's Criminal Background Check Policy.

WMATA also argues that any tort claims "arising under" the Criminal Background Check Policy must be dismissed because WMATA's hiring policies are "governmental/discretionary decisions" that are immune from suit. Mem. at 6. The D.C. Circuit has considered whether WMATA's employment practices are discretionary and held "that decisions concerning the hiring, training, and supervising of WMATA employees are

8

discretionary in nature, and thus immune from judicial review." *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997); *see also United States v. Gaubert*, 499 U.S. 315, 322-25 (1991). Guided by these cases, the Court will also dismiss any tort claims "arising under" the Criminal Background Check Policy.

### D. Federal Tort Claims Act

In his opposition, Mr. Pendergrass argues that he has made out a tort claim under the Federal Tort Claims Act. WMATA agrees that the Compact waives its immunity from suit for torts, if those torts are not part of "performance of a governmental function." D.C. Code § 9-1107.01(80). "The Authority shall be liable . . . for its torts and those of its Directors, officers, employees and agent committed in the conduct of any proprietary function, . . . but shall not be liable for any torts occurring in the performance of a governmental function." *Id*. WMATA argues that it is immune from tort liability when it performs "quintessential governmental activities . . . and non-quintessentially governmental, discretionary activity." Reply at 3; *see also Buckhart*, 112 F.3d at 1216 ("For those activities that are not quintessential governmental functions, immunity will depend on whether the activity is 'discretionary' or 'ministerial.'"). WMATA argues that its employment decisions are "non-quintessentially governmental, discretionary activit[ies]."

In *United States v. Gaubert*, the Supreme Court defined a discretionary function as "one that involves choice or judgment" that is exercised "based on considerations of public policy." 499 U.S. at 323, 325. To determine if an activity is discretionary, a court must first determine whether a "'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.'" *Cope v. Scott*, 45 F.3d 445, 448 (D.C. Cir. 1995) (quoting *Gaubert*, 499 U.S. at 322). If there is a prescribed course of action, sovereign immunity does not bar suits based on a failure to follow that course. *Id*. "If, however, the governing statutes leave

9

room for choice, an exercise of such choice is exempt from suit under the FTCA if the decision is susceptible to policy judgment and involved an exercise of 'political, social, or economic judgment." *Burkhart*, 112 F.3d at 1217 (internal citations and quotation marks omitted).

As noted, the D.C. Circuit has already analyzed WMATA's employment practices and found that "decisions concerning the hiring . . . of WMATA employees are discretionary in nature, and thus immune from judicial review." *Id*. Therefore, Mr. Pendergrass's allegation that WMATA violated the Federal Tort Claims Act will be dismissed.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant WMATA's Partial Motion to Dismiss and dismiss all claims except those arising under Title VII. A memorializing Order accompanies this Memorandum Opinion.

Date: October 11, 2018

ROSEMARY M. COLLYER
United States District Judge